THE HARTMAN TOBACCO COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104919. Promulgated October 8, 1941.

*John S. Murtha, Esq.*, for the petitioner.
*C. P. Reilly, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined deficiencies of $14,781.36 and $9,058.87 in income tax for the fiscal years ended June 30, 1937, and 1938. Two issues are presented for decision:

1. What is the basis for depreciation on fixed assets acquired by the petitioner at the time of its incorporation in 1928?

2. Is the petitioner entitled to a dividends paid credit representing cash paid to preferred stockholders during the two taxable years? The facts have been stipulated.

The petitioner filed its corporate income tax returns for the taxable years with the collector at Hartford, Connecticut. The petitioner was organized on March 22, 1928, pursuant to an agreement entered into on January 27, 1928. The petitioner was authorized to issue 25,000 shares of $100 par value 6½ percent cumulative first preferred, 5,000 shares of $100 par value 6½ percent cumulative second preferred, and 250,000 shares of $10 par value voting common stock.

Several organizations, engaged in the shade-grown tobacco business, desired to consolidate their businesses into one. They entered into an agreement in which they were joined by an investment securities firm. The investment firm was to furnish "possibly needed working capital." The agreement was dated January 27, 1928. The parties to it were Steane, Hartman & Co. (hereinafter called Steane), a corporation, A. & S. Hartman, a partnership, Sol Kohn & Co., a partnership, and Thomson, Fenn & Co., the investment firm. A. & S. Hartman owned all of the stock of the Connecticut Sumatra Tobacco Co. (hereinafter called Connecticut), a corporation engaged in

the shade-grown tobacco business, and Sol Kohn & Co. owned all of the stock of Kohn Brothers, Inc., a corporation engaged in that same business.

The three tobacco companies agreed to transfer to the petitioner, the new corporation to be formed, all of their good will and fixed assets, including the fixed assets of the two subsidiaries and current assets, including all merchandise current assets, in an amount not less than $1,125,000. The petitioner, in return, was to issue to the three parties 100,000 shares of its common stock and 5,000 shares of its second preferred stock and was to assume $1,340,000 of the liabilities of those three parties and was also to assume additional current liabilities equal in amount to all current assets received in excess of $1,125,-000. Thomson, Fenn & Co. agreed to purchase 15,000 shares of first preferred stock and 50,000 shares of common stock of the petitioner for $2,135,500, which it intended to sell to the public.

Transfers were made pursuant to the agreement on March 22, 1928, at which time the petitioner assumed liabilities of the transferors in the amount of $2,188,141.22. The total value of the transferred assets was $3,857,629.16, not counting good will. The value of assets over liabilities was, thus, $1,669,487.94. The following table shows the basis of the fixed assets in the hands of the transferors and their values at the time they were transferred and the value of current assets transferred:

| Transferor | Fixed assets | | Current assets |
| --- | --- | --- | --- |
| | Basis | Value | |
| Steane | $358,817.52 | $1,031,009.22 | $639,561.67 |
| A. & S. Hartman (through Connecticut) | 178,424.19 | 680,891.79 | 957,011.22 |
| Sol Kohn & Co. (through Kohn Bros., Inc.) | 198,371.00 | 245,675.09 | 303,480.17 |
| Total | 735,612.71 | 1,957,576.10 | 1,900,053.06 |

Stock of the petitioner was issued as follows:

| | First preferred | Par value | |
| --- | --- | --- | --- |
| | | Second preferred | Common |
| Steane | | $220,000 | $500,000 |
| Connecticut | | 200,000 | 333,340 |
| Kohn Brothers, Inc | | 80,000 | 166,660 |
| Thomson, Fenn & Co | $1,500,000 | | 500,000 |
| Total | 1,500,000 | 500,000 | 1,500,000 |

Thomson, Fenn & Co. paid $2,135,500 on March 27, 1928, for the stock issued to it, including a few shares originally issued to incorporators. About this same time it bought $1,295,000 par value of

United States Treasury Certificates for and on the order of the tobacco companies, divided as follows:

| | |
|---|---|
| Steane | $650, 000 |
| A. & S. Hartman | 414, 000 |
| Connecticut | 4, 000 |
| Sol Kohn & Co | 227, 000 |
| Total | 1, 295, 000 |

The petitioner paid to Thomson, Fenn & Co. $1,295,000 on account of the purchase price of the certificates, $650,000 for Steane, $413,333.33 for A. & S. Hartman, and $226,666.67 for Sol Kohn & Co. That payment represented discharge of a like amount of the total liabilities of $2,188,141.22 assumed by the petitioner, mentioned above. Steane and A. & S. Hartman each organized a corporation and transferred to it some excess current assets in exchange for its stock. Steane, Connecticut, and Kohn Brothers, Inc., were all dissolved in 1928, as were the partnerships of A. & S. Hartman and Sol Kohn & Co.

Thomson, Fenn & Co. accepted orders from the public for the first preferred stock of the petitioner at $98.50, beginning on March 15, 1928, and later filled the orders. It accepted orders for the common stock at $23.25, beginning March 21, 1928, and later filled the orders.

The petitioner contends that it is entitled to compute depreciation for the taxable year on fixed assets which it received at the time of its organization in 1928 upon the fair market value of those assets at that time, their cost to it, rather than upon the smaller basis of those assets in the hands of the transferor companies. The Commissioner, on the other hand, contends that the petitioner is not entitled to the stepped-up basis but must take the same basis as the transferor companies had. The Revenue Act of 1936, which applies in the case of both of these fiscal years, provides in section 114 that the basis for depreciation shall be the same as the basis provided in section 113 for determining gain or loss. Section 113 (a) (8) provides that if property was acquired after December 31, 1920, by a corporation issuing its stock or securities in connection with a transaction described in section 112 (b) (5), the basis shall be the same as it would be in the hands of the transferor, increased in the amount of any gain recognized to the transferor upon the transfer under the law applicable to the year in which the transfer was made. Section 112 (b) (5) provides that no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such persons are in control of the corporation and have received stock and securities substantially in proportion to their interests in the property prior to the exchange. The Revenue Act of

1928, which determined the tax consequences of the 1928 transfers, contained section 112 (b) (5), which was substantially similar to the same numbered provision of the Revenue Act of 1936.

The petitioner contends that the 1928 transaction did not come within section 112 (b) (5) of the Revenue Act of 1928. Its first reason in support of this conclusion is that there was not the control in the transferors required by the statute, i. e., ownership of 80 percent of the stock of the petitioner. This argument is based upon the assumption that the transferors were the three tobacco companies only and the investment company may not be regarded as a transferor. This is a complete answer to the contention of the respondent if the investment company may not be regarded as one of the transferors.

Thomson, Fenn & Co., however, must be regarded as one of the transferors along with the three tobacco companies. It transferred money to the petitioner in exchange for stock, pursuant to the agreement of January 27, 1928. That money was property within the meaning of section 112 (b) (5). *Portland Oil Co.* v. *Commissioner*, 109 Fed. (2d) 479, affirming 38 B. T. A. 757. The petitioner argues that the requisite control was lacking, nevertheless, because Thomson, Fenn & Co. had already committed itself to sell the stock. The cases it cites are ones wherein a binding agreement to sell all, or a sufficient quantity, of the stock had been entered into prior to the completion of the transfer. The petitioner has failed to produce evidence that this is such a case. Thomson, Fenn & Co. intended and desired to sell their share of the stock, and had made some commitments to sell an undisclosed number of shares. The record does not show the number of shares involved in binding commitments made before the transfer was completed. Thus, it does not show that the requisite control in the four transferors did not exist immediately after the transfer. Nor does it show that the commitments were in sufficient volume to destroy the substantial proportion of stock received to property transferred, in case that requirement could be affected by sales commitments, a point that need not be decided here. The conclusion is that the four transferors immediately after the exchange were in control of the petitioner, owning all or substantially all of the stock of the petitioner.

The petitioner's second argument to show that section 112 (b) (5) of the Revenue Act of 1928 did not apply is that the properties were not transferred solely in exchange for stock or securities of the petitioner. Section 213 (f) (1) of the Revenue Act of 1939 is made to apply retroactively to a transaction like the 1928 transfer involved in this proceeding, which has never been litigated or closed by agreement. It provides that the assumption of liabilities of the transferors by the transferee, in exchanges otherwise coming within section 112

(b) (5), shall not be considered as "other property or money" and shall not prevent the exchange from being within the provisions of section 112 (b) (5). Paragraph (h) (1) of section 213 provides that, for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required, liabilities assumed shall be considered as stock or securities of the transferee received by the transferor. The petitioner, apparently recognizing the applicability of these provisions of the Revenue Act of 1939, contends that the petitioner did not assume liabilities of the transferor in the amount of $2,188,141.22, since the $1,290,-000 paid by the petitioner to Thomson, Fenn & Co. for United States certificates was in fact the equivalent of a cash payment to the transferors as cost of the properties and was not in any true sense the assumption of liabilities of the transferor companies.

The original agreement of January 27, 1928, expressly provided that the petitioner was to assume liabilities of the transferors aggregating $1,340,000, and it also provided that, if current assets in excess of $1,125,000 were transferred to the petitioner, the petitioner would assume liabilities of the transferors in an amount equal to the excess. The respondent points out that the $1,340,000 must necessarily have referred to a bank loan of $50,000 and the $1,290,000 now in question. Current assets in excess of $1,125,000 were transferred to the petitioner and the petitioner was complying precisely with the contract when it assumed the liabilities of the transferors in the amount of $1,290,000 for the debt which they contracted with Thomson, Fenn & Co. in the purchase of the United States Treasury certificates. The petitioner did not order, buy, or own the certificates. The minutes of the special meeting of the board of directors of the petitioner held on March 22, 1928, at the very time of its organization, recite that the liabilities of the transferors assumed by the petitioner amounted to $2,188,141.22. Balance sheets attached to the 1928 return show the same. That amount included the $1,290,000 here in controversy. The original agreement required the transfer of "all the current merchandise assets of all three transferors." Current assets in excess of $1,125,000 were transferred to the petitioner and, in order to comply with the agreement, it had to assume current liabilities of the transferors in an amount equal to the excess. The transaction in 1928 was regarded as a nontaxable one and no tax has ever been paid on any gain realized by anyone from that transaction. The petitioner, in order to get a stepped-up basis at this late date, argues now that the 1928 transaction was taxable because $1,290,000 was a payment in the equivalent of cash of a part of the cost of the assets and was not a liability assumed. We see no reason to conclude, contrary to the express terms of the agreement of January 27, 1928, to the minutes

above referred to, to the 1928 balance sheets, and to the stipulation, that the petitioner did not assume a current liability of the transferors in the amount of $1,290,000. This is so even if the transferors deliberately incurred a current liability of $1,290,000 in order to comply with the contract and permit the transfer of current assets in excess of $1,125,000. We, therefore, reject the contention of the petitioner in regard to this item and hold that the petitioner assumed liabilities of the transferor in 1928 in the total amount of $2,188,141.22.

The transferors, including the three tobacco companies and the investment company, acquired all of the stock of the petitioner at its incorporation. The assumption of liabilities is to be regarded under section 213 (h) (1) of the Revenue Act of 1939 as stock or securities of the transferee. The amount of the stock and securities received by each of the four transferors was substantially in proportion to its interest in the property prior to the exchange. The respondent in his brief has demonstrated this by a computation which it is not necessary to discuss here in view of the fact that the petitioner does not contend to the contrary if Thomson, Fenn & Co. is to be regarded as a transferor and if the $1,290,000 is to be regarded as a liability assumed. It follows that the transaction was within section 112 (b) (5) and the petitioner is not entitled to the stepped-up basis which it claims. The determination of the Commissioner on the depreciation issue is sustained.

A plan to recapitalize the petitioner was adopted on May 27, 1937. There was an accumulation of unpaid dividends on the first preferred stock of about $47.75 per share. The plan was to retire that stock by having each share exchanged for:

> 1 share of new prior preference no-par-value stock paying dividends of $4 a year, callable at $100 and accrued dividends;
> 1 share of new no par value preference stock paying dividends of $3 a year, callable at $50. This was in lieu of the accumulated dividends of $47.75 on the retiring first preferred stock;
> 2 shares of common;
> A cash payment of $4.

The plan was carried out and the cash payment was made by payment of $55,460 in 1937 and $1,280 in 1938. The earnings of 1937 and 1938 were more than sufficient to pay the above amounts.

The Commissioner argues that the above transaction was a recapitalization and a reorganization; the gain, if any, was not recognized except to the extent of the cash; the cash was not shown to have been taxable as a dividend to any shareholder; and, therefore, no credit is allowed. He says the petitioner must go into the case of each stockholder to show that it actually had gains and the $4 was taxable to it as a dividend. Section 27 (h) does not require such proof.

It is sufficient if the distribution would have been taxable as a dividend to any stockholder who might have had a gain. The Commissioner, in a similar case, conceded that a dividends paid credit was proper to the extent of the cash distributed and the propriety of his action was recognized by the court. *Skenandoa Rayon Corporation*, 122 Fed. (2d) 268, affirming 42 B. T. A. 1287. Section 27 (a) allows the credit for dividends paid during the taxable year. Section 115 (a) defines "dividend" as including any distribution made by a corporation to its shareholders out of earnings of the taxable year and the distribution is presumed to have been made from those earnings. This petitioner distributed $4 in cash to shareholders during the taxable years and had sufficient current earnings for the purpose. The cash was a dividend and the credit is allowed by the statute.

*Decision will be entered under Rule 50.*